UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REBELLION DEVELOPMENTS LIMITED,
CHRISTOPHER KINGSLEY and JASON
KINGSLEY,

        Plaintiffs,

v.                                              Case No.: 12-12805
                                                Honorable Victoria A. Roberts

STARDOCK ENTERTAINMENT, INC. and
IRONCLAD GAMES CORPORATION,

        Defendants

_____/

## ORDER AND OPINION GRANTING DEFENDANTS' MOTION TO DISMISS

**I. INTRODUCTION**

Plaintiffs Rebellion Developments Limited, Christopher Kingsley and Jason Kingsley (collectively "Plaintiffs") bring suit against Defendants Stardock Entertainment, Incorporated and Ironclad Games Corporation (together, "Defendants"). Plaintiffs allege that Defendants' computer game entitled SINS OF A SOLAR EMPIRE: REBELLION, infringes the registered trademark for their video game development company, REBELLION. Plaintiffs' Complaint contains the following counts: Count One, infringement of U.S. trademark under 15 U.S.C. §1114(1); Count Two, false designation of origin and unfair competition under 15 U.S.C. §1125(a); Count Three, violation of the Michigan Consumer Protection Act under M.C.L. § 445.903; and Count Four, common law unfair competition.

In their Motion to Dismiss, Defendants seek dismissal on the grounds that the First Amendment prohibits trademark claims for the use of a term in the title of an expressive work;

1

Plaintiffs sue Defendants because one of their recently released computer games has the name REBELLION as part of its title. Defendants argue that the Complaint, along with its exhibits and other documents, cannot satisfy the two-prong test set forth in *Rogers v. Grimaldi,* 875 F.2d 994 (2d. Cir. 1989).

The Motion to Dismiss is **GRANTED**. The Court finds that the *Rogers* test is controlling. Plaintiffs cannot satisfy either prong of the *Rogers* test in order to survive this motion to dismiss.

## II. BACKGROUND AND PROCEDURAL HISTORY

Jason and Christopher Kingsley founded Rebellion Developments Limited in 1991 as a computer and video game development company. Since 1991, Rebellion has evolved into a well-known British computer games company, and has developed more than forty video games for major gaming consoles such as the Sony Playstation, the Xbox, and the Wii.

Plaintiffs own U.S. Reg. No. 2845116 ("the '116 registration") for the mark REBELLION for use with, among other things, "entertainment and amusement machines and apparatus, namely, video games and electronic games; discs, optical discs, silicon chips, microchips, electronic circuits all encoded with computer programs for video games and all for use with the aforesaid apparatus; musical sound recordings, program memory cartridges for electronic amusement, namely, video game apparatus; parts for the aforesaid goods" and "computer programming, computer software development services for others; providing on-line website information in the field of entertainment software and computer software development services for others; customization, maintenance of computer programs; computer software design and development." The '116 registration has a registration date of May 25, 2004 and a claimed date of first use in October 1994.

Defendant Ironclad Games Corporation ("Ironclad") is a computer game developer, and Defendant Stardock Entertainment Incorporated ("Stardock") is the exclusive publisher and distributor of Ironclad's computer games. Defendants recently released a new computer game called SINS OF A SOLAR EMPIRE: REBELLION, and offer it for sale on their websites and other third party websites. On many of these websites, Defendants, reviewers, and players sometimes refer to the computer game as REBELLION. There is some evidence of consumer confusion; a YouTube user mistakenly made reference to Plaintiffs as the developer of SINS OF A SOLAR EMPIRE: REBELLION.

On April 23, 2012, Plaintiffs sent Defendants a letter requesting that they cease and desist from using REBELLION for computer games. Defendants refused. Plaintiffs filed their four-count Complaint on June 26, 2012.

## III. STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard does not "impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (1955). To determine whether the plaintiff has set forth a plausible claim, the Court "must construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir.1994).

In determining whether a complaint sets forth a claim plausible on its face, the Court may consider the pleadings, the exhibits attached to the complaint, and documents referred to in the complaint that are central to the plaintiff's claim. *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999); *Richmond Transp., Inc. v. Departmental Office of Civil Rights of U.S. Dept. of Transp.*, 11–13771, 2012 WL 1229947 (E.D.Mich. Apr.12, 2012). When reviewing a motion to dismiss, the district court may not consider matters beyond the complaint. *Winget v. JP Morgan Chase Bank, N.A.,* 537 F.3d 565, 576 (6th Cir. 2008).

## IV. APPLICABLE LAW AND ANALYSIS

### A. The Rogers Test Is The Controlling Authority In Lanham Act Cases Involving Titles of Expressive Works

Defendants argue that when a trademark owner asserts that the title of an expressive work infringes that trademark, courts hold that the standards for trademark infringement must be altered to accommodate the First Amendment's protection for freedom of expression. In such instances, courts apply a two-pronged test formulated by the Second Circuit in *Rogers v. Grimaldi*. Under the *Rogers* test, the trademark owner must show either (1) the title of the expressive work has "no artistic relevance" to the work, or (2) that the title "explicitly misleads as to source or the content of the work." *Rogers,* 875 F.2d. at 999.

Plaintiffs argue that the *Rogers* test does not govern this dispute. Instead, they argue that the First Amendment does not automatically insulate all artistic works from liability under the Lanham Act, and may offer little protection for a competitor who labels its commercial good with a confusingly similar mark. They say that Defendants are using REBELLION as a trademark because Defendants, in fact, filed a trademark application for the mark. Plaintiffs also argue that Defendants use the title SINS OF A SOLAR EMPIRE: REBELLION to attract public

attention by placing it on their packaging, and in its marketing & advertising materials. Therefore, Plaintiffs say Defendants use REBELLION solely to identify a source. As such, they argue that the likelihood of confusion factors set forth in *Wynn Oil Co. v. Thomas,* 839 F.2d 1183 (6th Cir. 1988) should be used in determining the sufficiency of their allegations.

*Rogers* controls. First, it is well established in this Circuit and others that video games are expressive works. *See Brown v. Entm't Merchants Ass'n*, 131 S. Ct. 2729, 2733 (2011); *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 444 F.Supp.2d 1012, 1039 (C.D.Cal. 2006); *Video Software Dealers Ass'n v. Maleng*, 325 F.Supp.2d 1180, 1184 (W.D.Wash. 2004); *James v. Meow Media, Inc.*, 300 F.3d 683, 696 (6th Cir. 2002).

Second, the Sixth Circuit adopted the *Rogers* test. See *Parks v. LaFace Records*, 329 F.3d 437, 450 (6th Cir. 2003) (holding that the likelihood of confusion and "alternative means" tests do not give sufficient weight to the public interest in freedom of expression); *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 937 (6th Cir. 2003) (finding *Rogers* the most appropriate method to balance the public interest in avoiding consumer confusion with the public interest in free expression).

Third, Plaintiffs' arguments against the use of the *Rogers* test are unpersuasive. The *Rogers* court itself recognized that the titles of literary and artistic works could acquire secondary meaning and become eligible for protection as trademarks. *Rogers,* 875 F.2d at 998. *Rogers* also did not include in its test, any inquiry as to whether the title can or does function as a source identifier. The Second Circuit acknowledged that "[t]itles, like the artistic works they identify, are of a hybrid nature, combining artistic expression and commercial promotion. The title of a movie may be both an integral element of the film-maker's expression as well as a significant means of marketing the film to the public. The artistic and commercial elements of titles are

inextricably intertwined." *Id.* It is clear that the commercial nature of artistic works does not diminish their protections under the First Amendment, and the fact that a title attempts to attract public attention with stylized components is irrelevant.

Plaintiffs also argue that the cases Defendants cite in support of their argument all involve defendants who use a trademarked term as a direct reference to the plaintiff. In *Rogers,* for example, the defendant used the movie title "Ginger and Fred" because he intended to reference Ginger Rogers and Fred Astaire. Plaintiffs argue that because there is no indication of such reference here, the *Rogers* test does not apply. Plaintiffs say that Defendants are expressing nothing more than what any user of a suggestive trademark expresses when branding its product, and the Lanham Act's limitations on such expressions do not violate the First Amendment.

This argument is unavailing. This referential requirement is simply not required by either prong of the *Rogers* test. Further, many courts have applied *Rogers* where the defendants' usage made no reference to the plaintiffs. *Moore v. Weinstein Co.*, LLC, 2012 U.S. Dist. LEXIS 72929 (M.D. Tenn. May 23, 2012); *Martha Elizabeth, Inc. v. Scripps Networks Interactive, LLC*, 2011 U.S. Dist. LEXIS 49702 (W.D. Mich. May 9, 2011); *Roxbury Entertainment v. Penthouse Media Group, Inc.,* 669 F.Supp.2d 1170 (C.D. Cal. 2009).

The Court concludes that the *Rogers* First Amendment test – not the *Wynn Oil* likelihood of confusion test – governs this dispute.

## B. The *Rogers* Test Is Appropriate In The Early Stages of Litigation

The Court now turns to whether a *Rogers* First Amendment defense is appropriate on a defendants' motion to dismiss.

Defendants argue that courts have routinely applied the First Amendment defense to trademark and other Lanham Act claims. Courts are cognizant of vindicating First Amendment

protections through early dispositive motions to avoid chilling speech. However, Plaintiffs argue that the *Rogers* test is not well-suited to an early dispositive motion. They claim that this is because courts do not regularly decide the applicability of the First Amendment defense by making their own conclusions about the underlying work at the pleading stage, particularly when a court has not even had the opportunity to examine the underlying work.

The *Rogers* test is an appropriate one to apply in the early stages of litigation. Although the Court has not found a case directly on point, it concludes that the First Amendment should be considered an appropriate affirmative defense based on similar cases in the Sixth Circuit. *Arnold v. Treadwell*, 642 F. Supp. 2d 723, 729 (E.D. Mich. 2009). The *Arnold* Court reasons:

> "…[D]icta in similar cases in the Sixth Circuit indicates that the court treats the raising of the First Amendment as an affirmative defense in Lanham Act claims. *See Parks v. LaFace Records*, 329 F.3d 437 (6th Cir.2003) (referring to the First Amendment as a "defense" to a Lanham Act case); *ETW Corp. v. Jireh Publishing, Inc.*, 332 F.3d 915, 924 (6th Cir.2003) (noting that the defendant in a Lanham Act claim "has raised the First Amendment as a defense to all of ETW's claims, arguing that Rush's use of Woods's image in his painting is protected expression")." *Id.*

As a general rule, an affirmative defense must be pleaded in the answer. *Crawford v. Zeitler*, 326 F.2d 119 (6th Cir. 1964); *Pierce v. Oakland County,* 652 F.2d 671 (6th Cir. 1981). However, the Sixth Circuit repeatedly holds that there is no reason not to grant a motion to dismiss where the undisputed facts conclusively establish an affirmative defense as a matter of law. *Hensley Mfg. v. ProPride, Inc.,* 579 F.3d 603, 613 (6th Cir. 2009). Therefore, an affirmative defense is not waived, even though not specifically pled, where the defense clearly appears on the face of pleading and is raised in a motion to dismiss. *Pierce,* 652 F.2d at 672; *Berry v. Chrysler*, 150 F.2d 1002 (6th Cir. 1945); *A.G. Reeves Steel Construction Co. v. Weiss*, 119 F.2d 472 (6th Cir.), cert. denied, 314 U.S. 677, 62 S.Ct. 181, 86 L.Ed. 541 (1941).

There is ample case law applying the First Amendment in motions to dismiss. *Stewart Surfboards, Inc. v. Disney Book Group*, LLC, 2011 U.S. Dist. LEXIS 155444 (C.D. Cal. May 11, 2011); *Brown v. Electronic Arts, Inc.*, 2009 U.S. Dist. LEXIS 131387, (C.D. Cal. Sept. 23, 2009); *Kiedis v. Showtime Networks, Inc.*, CV 07-8185 DSF (CD. Cal. 2008); *Woodward v. Jackson*, 2004 U.S. Dist. LEXIS 6292 (S.D. Ind. 2004).

Accordingly, the Court finds no persuasive basis to deny application of the First Amendment affirmative defense at this motion to dismiss stage of litigation.

**i. The Word REBELLION Has Some Artistic Relevance To Defendants' Computer Game**

Defendants are entitled to dismissal on the pleadings. The first prong of the Rogers test, which requires that trademark owners prove that the title has no artistic relevance to the underlying work, *Rogers,* 875 F.2d at 999, cannot be satisfied by Plaintiffs.

The Court agrees with Defendants that the word REBELLION has some artistic relevance to Defendants' computer game because within the game, players may choose to align with "loyalist" or "rebel" factions in the context of a civil war.

The requisite level of artistic relevance is a low threshold: courts have held that it merely must be above zero. *See Stewart Surfboards, Inc. v. Disney Book Group, LLC,* 2001 U.S. Dist. LEXIS 155444, *17 (C.D. Cal. May 11, 2011); *E.S.S. Entmt. 200, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1100 (9th Cir. 2008). On Defendants' website, the computer game is described as follows:

> "The time of Diplomacy is over. The length of the war and differing opinions on what should be done to bring the war to an end has led to a splintering of the groups involved. The controlling powers-that-be have depleted arsenals and seemed to have exhausted all efforts of diplomacy. Trapped in a stalemate, sub-factions have rebelled and broken off the main alignments. Rebellion is upon us." (Complaint Ex. B and C).

8

Defendants' use of the word REBELLION in their computer game title clearly meets the low threshold of the first prong of the *Rogers* test. Plaintiffs claim that Defendants are trying to prove artistic relevance based on materials found on the Defendants' own website, and are therefore going beyond the scope of the pleadings. Although Plaintiffs are correct in saying that the above text is from Defendants' website, the text is nevertheless included in the Complaint as screenshots in Exhibits B and C. Plaintiffs used the screenshots to show how the term REBELLION is used on Defendants' website. Therefore, based on Plaintiffs' pleadings, the Court finds that the word REBELLION has artistic relevance to Defendants' work.

**ii. The Title Of Defendants' Computer Game Is Not Explicitly Misleading As To Source Or Content**

Defendants argue that Plaintiffs cannot show that the title of Defendants' computer game is explicitly misleading as to the source or content of the computer game, and that the mere fact that a trademarked term such as REBELLION appears in a title is not sufficient to prove that the title is explicitly misleading.

Plaintiffs argue that they have adequately pled that Defendants' infringement misleads consumers as to endorsement or sponsorship. Because they allege that Defendants' infringement is a willful attempt to capitalize on the substantial reputation and goodwill of Plaintiffs, this alone precludes the Motion to Dismiss based on *Rogers*.

Plaintiffs' argument is insufficient under *Rogers*. The Sixth Circuit has made clear that even if members of the public are misled, such confusion is not actionable without an "overt misrepresentation." *ETW,* 332 F.3d at 927; *Rogers,* 875 F.2d at 1000. Plaintiffs' argument that Defendants willfully attempted to capitalize on the reputation of Plaintiffs is unpersuasive; because the *Rogers* test governs this dispute, factors that might establish likelihood of confusion – such as the Defendants' intent – are irrelevant. Nothing on the face of the pleadings indicate

9

that Defendants engaged in overt misrepresentation by using the term REBELLION in the title of their computer game. The Court agrees with Defendants, and finds Plaintiffs cannot satisfy the second prong of the *Rogers* test.

## IV. CONCLUSION

Plaintiffs' Complaint and its exhibits establish that Defendants' use of REBELLION is expressive speech and is protected under the First Amendment. Plaintiffs cannot satisfy the *Rogers* test; they cannot establish that REBELLION has no artistic relevance to Defendants' computer game, or that it is explicitly misleading as to source or content. Defendants' Motion to Dismiss is **GRANTED**.

**IT IS ORDERED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  May 9, 2013

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on May 9, 2013.

S/Linda Vertriest
Deputy Clerk